# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MIRANDA DOLORIS MICHAEL,** | : | **Civil No. 3:16-CV-00658** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **NANCY A. BERRYHILL,**[1] | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.      Introduction

Plaintiff Miranda D. Michael ("Ms. Michael"), an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act.  In this Social Security Appeal, Michael advances one primary claim of error alleging that the Administrative Law Judge ("ALJ") failed to accord greater weight to her treating

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. §405(g), Acting Commissioner Nancy A. Berryhill is automatically substituted as the named Defendant in place of the former Commissioner of Social Security.

physician's opinion than to the opinion of a non-treating, non-examining state agency physician. (Doc. 15 p. 8.) She argues that, in turn, because the ALJ failed to adopt her treating physician's opinion, the Step 5 determination that Michael was not disabled is unsupported by substantial evidence. (Doc. 15 p. 14.) In the instant case, the ALJ reviewed the medical opinion of Ms. Michael's treating physician, which concluded that Ms. Michael was disabled, and the opinion of a state agency medical source, which found that she retained the residual functional capacity to perform a range of light work with limitations. The ALJ resolved the case at Step 4 and concluded that Ms. Michael was not disabled because her residual functional capacity enabled her to return to her past relevant work.

Given the deferential standard of review that applies to Social Security Appeals, which calls upon us to simply determine whether substantial evidence supports the ALJ's findings, we conclude that substantial evidence does exist in this case, which not only justified the ALJ's evaluation of the medical opinion evidence, but justified Ms. Michael's residual functional capacity. Therefore, for the reasons set forth below, the Commissioner's decision is affirmed, and Ms. Michael's request for relief is denied.

## II.    Statement of Facts and of the Case

On September 20, 2012, Ms. Michael protectively filed applications for disability benefits under both Title II and XVI of the Social Security Act.   In Ms. Michael's Title II and Title XVI applications, she alleged that she had been disabled since June 7, 2012. (Tr. 149; 151.)[2]  According to Ms. Michael, her claim of disability is based upon a series of aliments including anemia, a rare lung disease, diabetes, extreme weight loss, and pneumonia. (Tr. 179.)  At the time of Ms. Michael's applications, and the onset of her alleged disability, she was in her late 50's and was considered an individual of "advanced age" according to the regulations promulgated under the authority of the Act. (Tr. 54.) See 20 C.F.R. §404.1563(e).  Ms. Michaels is a high school graduate and attended Consolidated School of Business.[3]   (Tr. 41.)   Her work history report includes employment spanning from 2001 through 2012, in which she was employed as a collections representative and an administrative secretary. (Tr. 190.)

---

[2] Ms. Michael filed for benefits for Title II and XVI on the same day.  Initially, Ms. Michael claimed an alleged onset date of January 4, 2012 in her Title II application (Tr. 151) and an alleged onset date of June 7, 2012 in her Title XVI application. (Tr. 149.)  On October 14, 2013, Ms. Michael amended her Title II application alleged onset date to June 7, 2012. (Tr. 173.)

[3] Consolidated School of Business is a career training private institution located in York, Pennsylvania.

Ms. Michael's health ailments related to her disability claims began in early 2012. In January 2012, Ms. Michael presented to Memorial Hospital's emergency department with shortness of breath, chest pain, and a cough. (Tr. 257-258.) Ms. Michael was admitted and treated for pneumonia. (Id.) At her two week follow up, Ms. Michael reported she was feeling better but complained of decreased energy, fatigue, and unexplained weight loss. (Tr. 360.) After testing, Ms. Michael was diagnosed with pulmonary nodules and underwent video-assisted thoracoscopic surgery ("VATS") in June 2012. (Tr. 433; 421.) Ms. Michael started taking Prednisone, an oral steroid, to treat her pulmonary condition. (Tr. 543.) By September 2012, after continuing treatment with Prednisone, Ms. Michael's pulmonary condition was improving, she was no longer losing weight, and she was less symptomatic. (Tr. 317.) Ms. Michael reported she was continuing to feel well and exercising sporadically (Tr. 386) and that her appetite was significantly improving. (Tr. 603.)

Eight months later Ms. Michael was admitted into York Hospital from May 6, 2013 through May 11, 2013 after presenting with chest pain. (Tr. 621-622.) A CT scan revealed an increasing mass in her left lung. (Tr. 642.) Ms. Michael informed the treating doctor that steroids had helped her in the past and steroids were administered. (Tr. 642; 644.) By the following month, Ms. Michael's

symptoms had improved and she was starting to feel better.  (Tr. 581.)  She had gained 32 pounds since November 2012.  (Tr. 666.)  Unfortunately, in August 2013, Ms. Michael suffered a heart attack and successfully underwent a stent procedure in her right coronary artery. (Tr. 875.) The doctor that performed her surgery believed if Ms. Michael began taking particular medications, she would do well.  (Tr. 876.)  In September 2013, Ms. Michael started cardiac rehabilitation. (Tr. 815.) She began walking 20-30 minutes daily and using light free weights to perform resistance exercises.  (Id.) In January 2014, Ms. Michael reported she was feeling better and her condition was improving.  (Tr. 810.)

Ms. Michael's disability applications were initially denied on November 19, 2012 (Tr. 75) and on January 4, 2013, she sought a hearing to contest the denials. (Tr. 82.)  On June 27, 2014, the ALJ conducted a hearing via telephone considering Ms. Michael's disability applications. (Tr. 38-54.) At this hearing, the ALJ heard testimony from Ms. Michael and Sheryl Bustin, an impartial vocational expert. (Id.) Ms. Michael testified that she suffered from pain due to her lung nodules and pulmonary condition.  (Tr. 41-42.)  She testified that she has back pain everyday as well, and although she takes medication for it, the pain is still there. (Tr. 42.)  Ms. Michael reported that since she quit smoking cigarettes, she has had no improvement with her pulmonary condition.  (Id.)  She testified that when she

walks, she frequently gets dizzy and she believes it stems from the medication she is prescribed. (Tr. 44.) Ms. Michael testified she could not return to her previous position because she is too absent-minded, cannot remember very well, cannot stay focused, and cannot sit or stand for a long period of time. (Tr. 47.) She reported she could not walk for more than one block without getting out of breath and could not lift anything over ten pounds without a strain on her chest. (Tr. 48.)

The ALJ also received and reviewed a plethora of medical records from multiple medical sources (Tr. 257-996), and had the benefit of two opinions from treating physician Dr. Murudkar[4] (Tr. 574-575; 994-996), and two opinions from non-examining state agency physician Dr. Tran.[5] (Tr. 54-67.) These medical source opinions reached markedly different conclusions regarding Ms. Michael's capacity to perform work. Dr. Murudkar completed a two-page check block residual functional capacity questionnaire in February 2013.[6] (Tr. 574-575.) Dr. Murudkar concluded that Ms. Michael's impairments were severe enough that they

_____

[4] These two opinions are a replica of one another producing the exact same findings, quite literally word for word, with the exception of the date the residual functional capacity questionnaire was completed and signed.

[5] These two opinions are a replica of one another; two are in the record because one is for the disability determination of the DIB claim and the other is for the disability determination of the SSI claim.

[6] Dr. Murudkar completed a second essentially identical check block residual functional capacity questionnaire in April 2014. (Tr. 994-996.)

would constantly interfere with her attention and concentration to perform work related tasks. (Tr. 575.) Dr. Murudkar determined Ms. Michael would need to recline or lie down during an eight-hour workday in excess of the typical permitted breaks, could only walk one city block without rest or significant pain, could sit for 15 minutes and stand/walk for ten minutes, could sit for four hours and stand/walk for two hours out of an eight-hour work day and could occasionally life more less than ten pounds but never anything heavier. (Tr. 574-575.) Dr. Murudkar further stated that as a result of Ms. Michael's impairments, she would be absent from work more than four times per month. (Tr. 575.) Ultimately, Dr. Murudkar opined that Ms. Michael was not physically capable of working an eight-hour work day five days per week. (Id.)

In contrast, Dr. Tran, the non-examining state agency physician, reviewed the medical evidence of record as of November 2012, and concluded that Ms. Michael was physically capable of lifting and carrying twenty pounds occasionally and ten pounds frequently; sitting for six hours in an eight-hour workday; and standing and walking for six hours in an eight-hour workday. (Tr. 58-59.) Thus, Dr. Tran opined that although Ms. Michael did have some limitations in the performance of certain work activities, those limitations would not prevent her from performing her past relevant work. (Tr. 60.)

Following the hearing, on July 24, 2014, the ALJ issued a decision denying Ms. Michael's applications for disability benefits. (Tr. 22-30.) In this decision, the ALJ first found that Ms. Michael met the insured requirements of the Act through March 31, 2017. (Tr. 24.) At Step 2 of the five-step sequential analysis process that applies to Social Security disability claims, the ALJ concluded that Ms. Michael experienced the following severe impairments: diabetes, coronary artery disease, hypertension, anemia, and nodular lung disease. (Id.) At Step 3 of this sequential analysis, the ALJ concluded that none of Ms. Michael's impairments met a listing that would define her as *per se* disabled. (Tr. 19-20.)

Before considering Step 4, the ALJ fashioned Ms. Michael's residual functional capacity. The ALJ concluded that Ms. Michael could perform a range of light work with limitations. (Tr. 26.) Specifically, the ALJ noted that Ms. Michael can only occasionally climb, balance, stoop, kneel, crouch, and crawl. (Id.) Further, the ALJ added the limitation that Ms. Michael should avoid concentrated exposure to pulmonary irritants such as smoke, dusts, gases, fumes, high humidity, and temperature extremes and she should perform work that can be done either sitting or standing. (Id.)

In reaching this conclusion, the ALJ partially discounted Ms. Michael's statements concerning the intensity, persistence, and limiting effects of her

symptoms, noting that many of her allegations are not documented in the evidence of record. (Tr. 26-29.) The ALJ then carefully canvassed the clinical, diagnostic, and medical opinion evidence before concluding that Ms. Michael retained the residual functional capacity to perform a range of light work. (Id.) The ALJ noted that because Ms. Michael developed coronary artery disease after the state agency medical opinions were rendered, certain limitations were necessary to accommodate her medical condition. (Tr. 29.) The ALJ added environmental restrictions due to her pulmonary history. (Id.) In addition, the ALJ added postural limitations in order to permit Ms. Michael to alternate between sitting and standing. (Id.) The ALJ explained that a sit/stand option was necessary because although Ms. Michael's coronary issues are stable, activities such as frequent climbing or crawling would be more physically demanding than work where she primarily stands all day. (Id.) Having made these findings, the ALJ concluded, consistent with the testimony of the vocational expert that Ms. Michael could return to her past relevant work, as none of her impairments precluded her from performing those positions actually and generally. (Tr. 30.) The ALJ did not reach analysis at Step 5, as he determined Ms. Michael was not disabled.

Having exhausted her administrative remedies with respect to this adverse decision, Ms. Michael filed the instant appeal. (Doc. 1.) On appeal, Ms. Michael

argues that the ALJ erred in according inadequate weight to the opinion of her treating physician. (Doc. 15 p. 8.) She then contends that, in turn, because the ALJ failed to adopt her treating physician's opinion, the Step 5 determination is unsupported by substantial evidence. (Doc. 15 p. 14.) This case is fully briefed and is now ripe for resolution.

## III. <u>Discussion</u>

### A. <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d

1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Ms. Michael is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

**B.** **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe

impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's RFC.  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work.  42 U.S.C. §423(d)(5); 42 U.S.C.

§1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §§404.1512, 416.912;[7] Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

---

[7] The version of 20 C.F.R. §404.1512 effective on the date the ALJ issued his decision in his case has been amended twice during the pendency of this action. Section (a) of this regulation was not substantively changed in the Social Security Administration's most recent iteration of the regulation, and section (f) was essentially redesignated as section (b)(3) in the new version of 20 C.F.R. §404.1512. We cite to the version of this regulation that was effective on the date of the ALJ's decision, see 20 C.F.R. §404.1512(effective Jun. 12, 2014 to Apr. 19, 2015).

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence

In deciding what weight to accord to competing medical opinions the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Generally, more weight will be given to a source who has examined the claimant than to a source who has not. 20 C.F.R. § 404.1527(c)(1); 20 C.F.R. § 416.927(c)(1). Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §§ 404.1502, 416.902(defining treating source).

This general policy does not mean that state agency medical experts have no role to play in the disability determination process, however. Quite the contrary, at

the initial level of administrative review, state agency medical and psychological consultants may act as adjudicators.  See SSR 96-5p, 1996 WL 374183 at *4.  As such, they do not express opinions; they make findings of fact that become part of the determination.  Id. Further, in adjudicating  contested disability claims ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and must address these opinions in their decisions.  SSR 96-5p, 1996 WL 374183 at *6. Indeed, "[b]ecause State agency medical and psychological consultants ... are experts in the Social Security disability programs, ...20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) Opinions by state agency consultants can be given weight "only insofar as they are supported by evidence in the case record," SSR 96-6p, 1996 WL 374180 at *2, but in appropriate circumstances opinions from non-examining state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources.  Id. at *3.

In assessing the weight to be given to treating, and non-treating medical sources, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory

medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." Apfel, 225 F.3d at 317. Thus, an ALJ may not unilaterally reject a treating source's opinion, and substitute the judge's own lay judgment for that medical opinion. Instead, the ALJ typically may only discount such an opinion when it conflicts with other objective tests or examination results. See Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 Fed.Appx. 411, 415 (3d Cir. 2005).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c),

416.927(c). Further "[a]lthough treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2); see also 20 C.F.R. § 416.927(c)(2), '[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity,' Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Moreover, 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416.927(c)(2) require that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] gives to [a claimant's] treating source's opinion." "An ALJ 'may not reject [a physician's] findings unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'" Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993)(quoting Kent v. Schweiker, 710 F.2d 110, 115 n. 5 (3d Cir. 1983)).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of  Soc. Sec.,

667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429)). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

In making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F.Supp.2d 21, 29 (D.D.C.2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

Therefore, while it is true that an ALJ's credibility judgments alone cannot override a treating physician's medical opinion that is supported by the evidence, Morales v. Apfel, 225 F.3d 310, 310 (3d Cir. 2003), where an ALJ relies "upon more than personal observations and credibility determinations in discounting the

treating physician's finding of disability," the ALJ does not run afoul of relevant law. Drejka v. Commissioner of Social Security, 61 F. App'x 778, 782 (3d Cir. 2003) (distinguishing Morales v. Apfel, 225 F.3d 310, 318 (3d Cir. 2000) (holding that an ALJ's credibility judgments alone cannot override a treating physician's medical opinion that is supported by the evidence)).

###    D.    The ALJ's Decision in this Case is Supported by Substantial Evidence

Our review of the ALJ's decision in this case is limited to determining whether the findings of the ALJ are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). In this context, substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" Pierce v. Underwood, 487 U.S. 552, 565 (1988), and substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). Guided by this deferential standard of review, we also recognize that, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Therefore, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707.

In the instant case, judged against this deferential standard of review, we find that substantial evidence supports the decision by the ALJ that Ms. Michael could perform a limited scope of light work and, therefore, was not disabled. In this regard, the ALJ did not discount Dr. Murudkar's treating source opinion without explanation, but rather he found that the opinion that was not fully supported by the treating source records and at odds with the remaining medical opinion of record. Furthermore, the ALJ relied upon the state agency expert opinions in making this disability determination, a course of action that is authorized by law particularly when that state opinion draws significant support from the clinical record, as did the opinion of Dr. Tran in this case. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).

The ALJ's decision to afford little weight to the opinion expressed by Dr. Murudkar was supported by substantial evidence in the administrative record, and the grounds for that decision were fully and cogently explained by the ALJ in his

decision. Indeed, the ALJ's judgment on this score, weighing medical opinion evidence, was legally supported in at least three independent ways.

At the outset, we note that Dr. Murudkar's treating source opinions were expressed through cursory notations on checkbox forms. On these forms, Dr. Murudkar identified in a summary fashion a series of physical limitations on Ms. Michael's ability to work, limitations which would have precluded Ms. Michael from holding substantial employment. On this score, it is well settled that: "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Further, Dr. Murudkar completed two of these checkbox form opinions, approximately one year apart, and each opinion produced virtually the same results, word for word, even though Ms. Michael had reported improvement in her conditions after the first opinion was rendered, a factor which further undermined the weight to be given to these check box forms, which were in any event "weak evidence at best." Id.

Second, it is clearly established that an ALJ may discount a treating source opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Dr. Murudkar's opinion stated that Ms. Michael's condition had gradually declined since June

2012. (Tr. 996.) The ALJ found, however, that this statement was belied by the medical record and substantial evidence supported the ALJ's conclusion that the medical record taken as a whole did not disclose a consistent decline in Michaels' condition. Although it is true that Ms. Michael suffered ups and downs in regards to her quest for answers to her medical ailments, the ALJ found that a "gradual decline" was not an accurate portrayal of the arc of her treatment, and this conclusion is supported by substantial evidence in the medical record.

That record reveals that, while Ms. Michael was admitted to York Hospital in July 2012, (Tr. 373) by September 2012, after taking Prednisone, Ms. Michael's pulmonary condition was improving, she was no longer losing weight, and she was less symptomatic. (Tr. 317.) By November 2012, Ms. Michael was continuing to feel well and exercising sporadically (Tr. 386) and her appetite and weight was significantly improving. (Tr. 603.) Eight months later, Ms. Michael was again admitted to York Hospital in May 2013 (Tr. 621-622), she again resumed Prednisone (Tr. 642; 644) and by June 2013, her symptoms were again improving and she was starting to feel better. (Tr. 581.) She even gained 32 pounds since November 2012. (Tr. 666.) Although in August 2013, Ms. Michael suffered a heart attack, (Tr. 875) by October 2013, her condition again was improving and she was exercising sporadically. (Tr. 844.) The following month, Ms. Michael

started cardiac rehabilitation and began walking 20-30 minutes daily and was using light free weights to perform resistance exercises. (Tr. 815.) Given this evidence, which showed both medical reversals and improvements in Michaels' condition, we cannot say that the ALJ erred in rejecting Dr. Murudkar classification of Ms. Michael's medical history from June 2012 through April 2014 as a gradual decline. In fact, as of Dr. Murudkar's last documented appointment with Ms. Michael, she was feeling better and improving. (Tr. 810.)

Furthermore, Dr. Murudkar's opinion that Ms. Michael could not walk more than one city block without significant pain was actually contradicted by Ms. Michael's self-reported level of physical activity. By fall of 2013, Ms. Michael was tolerating low to moderate level exercise well. (Tr. 815.) She was walking twenty to thirty minutes daily, lifting light weights, and exercising 33-35 minutes at a time. (Id.) Significant pain was never reported; only shortness of breath on exertion at times. (Tr. 844.) Therefore, this evidence provided by Ms. Michael, which contradicted her treating doctor's opinion, also supported the ALJ's decision to afford that opinion only limited weight.

Finally, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139

24

F. App'x. 411, 415 (3d Cir. 2005). This settled principle also applies here, and further supports the ALJ's decision to give Dr. Murudkar's opinions limited weight. In this case, Dr. Murudkar opined in a checkbox form that Ms. Michael could not work, *inter alia*, because of her lung pain, shortness of breath, fatigue, and weight loss. However, Dr. Murudkar's treatment records often provided a different picture of Michaels' health. Dr. Murudkar's April 2014 opinion identified weight loss as one of Ms. Michael's symptoms; however, at Ms. Michael's last documented appointment with Dr. Murudkar in January 2014, she had been steadily gaining weight as her conditions were continuously improving and her BMI[8] was 26.6. (Tr. 811.) Additionally, Dr. Murudkar cited fatigue as another of Ms. Michael's symptoms. Though Ms. Michael initially reported fatigue to Dr. Murudkar on multiple occasions, (Tr. 351; 354; 357; 360; 363; 366; 370; 373; 380) treatment notes indicate that these symptoms started to diminish. At appointments with Dr. Murudkar thereafter, Dr. Murudkar documented that Ms. Michael denied fatigue. (Tr. 383; 386.) In February 2013, Ms. Michael reported she stopped taking Prednisone and fatigue had returned. (Tr. 730.) Once Ms. Michael resumed taking Prednisone (Tr. 724), Dr. Murudkar documented that she denied fatigue. (Tr. 724; 810; 844; 886.)

---

[8] Body mass index (BMI) is a measure of body fat based on height and weight that applies to adult men and women.

On these facts we find that the ALJ properly considered, in its totality, the objective medical evidence, in addition to evidence regarding Ms. Michael's activities, testimony, and other information provided by treating and examining doctors, when assessing this treating source opinion. The ALJ examined this medical expert opinion which evaluated the medical evidence, and found that it did not substantiate Ms. Michael's claims regarding the severity of her limitations. The ALJ then concluded that the opinion of the state agency doctor was more consistent with the treatment record of Ms. Michaels when viewed as a whole. The ALJ was entitled to give significant weight to this state agency physician opinion once the ALJ found that this opinion was supported by the greater weight of the medical record considered as a whole. See 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (state agency physicians are "highly qualified" and "experts" in social security disability evaluation.)

Michaels nonetheless argues that it was error for the ALJ to rely upon this November 2012 state agency doctor's opinion because that evaluation did not take into account subsequent medical events, most notably the treating source opinions issued in February of 2013 and April of 2014. However, the fact that state agency non-treating and non-examining source opinions are often issued at an early stage of the administrative process, standing alone, does not preclude consideration of

the agency doctor's opinion. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Instead, it may only be:

> inappropriate for an ALJ to rely on a medical opinion that was issued prior to the close of the period of claimed disability, . . ., if a claimant's medical condition changes significantly after the opinion is issued. See, e.g., Alley v. Astrue, 862 F.Supp.2d 352, 366 (D.Del.2012); Morris v. Astrue, Civ. Action No. 10–414–LPS–CJB, 2012 WL 769479, at *24 (Mar. 9, 2012). However, when a state agency physician renders an RFC assessment prior to a hearing, the ALJ may rely on the RFC if it is supported by the record as a whole, including evidence that accrued after the assessment. See, e.g., Pollace v. Astrue, Civil Action No. 06–05156, 2008 WL 370590, at *6 (E.D.Pa. Feb. 6, 2008); see also Johnson v. Comm'r of Soc. Sec., Civil No. 11–1268 (JRT/SER), 2012 WL 4328389, at *9 n. 13 (D.Minn. Sept. 20, 2012); Tyree v. Astrue, No. 3:09–1091, 2010 WL 2650315, at *4 (M.D.Tenn. June 28, 2010).

> Smith v. Astrue, 961 F. Supp. 2d 620, 644 (D. Del. 2013).

Here the ALJ expressly found that the state agency physician's opinion was supported by the medical record taken as a whole, and concluded that there had not been a material decline in Michaels' physical condition following that state agency expert's assessment. These findings draw support from evidence in the record, and may not be disturbed now on appeal. Therefore, the fact that the state agency opinion preceded the first treating source opinion by some four months, standing alone, does not compel a remand in this case.

Finally, we note that the remaining issue raised by Ms. Michael on appeal— her contention that the ALJ's Step 5 determination was in error—misconstrues the

ALJ's decision. Contrary to Ms. Michaels' suggestion, the ALJ's decision did not rest upon a Step 5 determination. Rather, the ALJ determined at Step 4 of this sequential analysis that Ms. Michael was capable of performing her past relevant work as administrative assistant and collections clerk, both as actually performed and as generally performed in the national economy, and thus found that Ms. Michael was not disabled at Step 4 of the sequential evaluation. If the ALJ finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); see also 20 C.F.R. §§ 404.1520(4)(iv) and 416.920(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled.") Concluding Ms. Michael was not disabled at Step 4, the ALJ stated that:

> In comparing the claimant's residual functional capacity with the physical capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. The vocational expert testified that an individual with the above work relation limitations could perform these 2 jobs as actually performed and as customarily performed *in the national economy*.

(Tr. 30) (emphasis added.) As such, the ALJ was under no obligation to continue the analysis of the five-step sequential evaluation because he determined Ms. Michael could perform her past relevant work. The mere fact that the ALJ concluded his Step 4 analysis by remarking that Ms. Michael could perform her

28

past relevant work as customarily performed in the national economy is not equivalent to the ALJ reaching the Step 5 analysis and does not provide grounds for a remand in this case.

While we have great empathy for the medical challenges Ms. Michael has endured, our responsibility in this setting is to determine whether the ALJ erred in assessing the evidence under a very deferential standard of review, one which requires less than a preponderance of the evidence, but more than a scintilla of proof. When we apply this standard of proof to the instant case, we are constrained to conclude that the ALJ's decision satisfied this threshold of proof, and must therefore be affirmed.

## IV.    <u>Conclusion</u>

Accordingly, because we find that the ALJ's decision is supported by substantial evidence, the Commissioner's decision shall be **AFFIRMED** and Ms. Michael's requests for relief shall be **DENIED**. It is further ordered that final judgment shall be entered in favor of the Commissioner and against Ms. Michael.

An appropriate Order follows.

So ordered this 3d day of January, 2018.

_s/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge